Julius Speyer

*v.*

Joseph Desjardins *et al.*

*Filed at Ottawa, October* 31, 1892.

1. Statute of Frauds — *compliance with the statute presumed.* In this State the doctrine is, both at law and in equity, that compliance with the statute of frauds is presumed, and the party plaintiff is not required to set out compliance in his declaration or bill.

2. Same — *when advantage of, taken by demurrer.* The benefit of the statute of frauds, as a defense, can be taken by demurrer only when it affirmatively appears from the bill that the agreement relied on is not evidenced by a writing duly signed.

3. When the allegation of a bill in chancery is that the complainant and defendant "entered into an agreement to purchase" certain lots and "to erect thereon" certain specified buildings, it will be presumed that the agreement was in writing and properly signed by the parties, and if the bill states a case for equitable relief, it will be error to sustain a demurrer to it on the ground it is not stated that the contract is in writing.

4. Same — *to what agreements it applies.* It is well settled that an oral contract by two or more persons to purchase real estate for their joint benefit is within the statute of frauds, but an agreement for a partnership for the purpose of dealing and trading in lands for profit is not within the statute, and the fact of the existence of the partnership and the extent of each partner's interest may be shown by parol evidence.

5. Partnership — *partnership lands — treated as personal property.* The real estate of a partnership is treated and administered in equity as between the partners, and for all the purposes of the partnership, as personal property and partnership assets, and for this reason it is immaterial whether the legal title to the partnership land is in all the partners, or in one, or in some number less than the whole, nor is it material whether the partnership was already formed and engaged in its business when the land was acquired and brought into the partnership stock, or whether the partnership was established and the land acquired and put in contemporaneously, or whether the partnership was established for the express and special purpose of dealing in and making profit out of the very land itself.

6. Where the facts of the existence of the partnership and that the lands were acquired and used for partnership purposes are shown by parol, it will be immaterial whether such partnership was formed by written articles or by parol.

7. Same — *agreements not within statute of frauds.* Partnership agreements and partnership lands, as between the partners, and for all partnership purposes, are not within the statute of frauds.

8. Same — *a partnership agreement.* An agreement between two parties by which they agree to purchase certain lots and erect buildings thereon, each party to contribute one-half of the money necessary for the enterprise, the lots and buildings then to be sold, and the profits or loss arising from the enterprise to be divided equally between them, is clearly a partnership agreement.

9. Resulting trust — *created in the purchase of partnership land with partnership funds.* Where an agreement for a part-

nership in the purchase of lots and the erection of buildings thereon for sale at a profit, provided that all liabilities created by either partner in furtherance of the enterprise, should be treated as joint liabilities to be shared by them equally, and one of the partners raised money by mortgage on the lots, out of which he paid the purchase-money of the lots, and took the title thereto in his name for convenience: *Held*, that the money paid for the lots was partnership money, and that a resulting trust at once arose out of the transaction in favor of the partnership.

Appeal from the Circuit Court of Cook county.; the Hon. L. C. Collins, Judge, presiding.

Julius Speyer, the appellant, exhibited in the Circuit Court of Cook county his bill in chancery against Joseph Desjardins and the other appellees; and the court sustained a demurrer to said bill, and dismissed it for want of equity.

The substance of the case made by the bill is as follows: On October 31, 1889, appellant and Joseph Desjardins entered into an agreement to purchase from one John Johnston certain lots situate in Cook county, and to erect thereon six buildings, according to plans and specifications prepared by appellant, who was an architect; the purchase and the erection of said buildings to be made with a view to the sale and disposition of the same, and the equal division between appellant and Desjardins of the profits arising from the enterprise, or, in case of loss, such loss to be shared by them equally. It was agreed that appellant should furnish, or cause to be furnished, one-half of the money necessary for the enterprise, and Desjardins the other half; all liabilities created by them or either of them to be, as between them, treated and considered as their joint liabilities, to be met and shared by them in equal shares; and all moneys advanced by either to be treated as advanced for and in behalf of both. It was further agreed that when the buildings were completed, the lots and buildings should be sold, or so many of them as it might be necessary to sell, in order to pay the liabilities and expenditures, and that whatever remained, of either money or real estate, after payment of liabilities and expenditures, and after reimbursing any excess that

either should have advanced over and above his one-half of the cost, should be equally divided between them, and that if there was any loss, it should be equally divided between them.

In pursuance of the agreement the lots were purchased for $3,750, and for convenience, the deed of conveyance made to Desjardins alone. At the same time with such purchase a loan of $12,000 was procured through one Giddings, and such loan secured by promissory notes and deeds of trust on the premises, all of which were executed by Desjardins, said Desjardins acting, however, in behalf and for the joint benefit of both himself and appellant.

The purchase price of the lots was paid out of the money raised on the notes and deeds of trust, such payment being made for the joint benefit of both parties, and the balance of said money, except as hereafter stated, was used in the erection of the buildings on the lots.

Appellant superintended, as architect, the construction of the buildings, and Desjardins did the carpenter work thereon, and it was agreed, for the purposes of an accounting between them, that appellant should be allowed three per cent on the cost of construction, and Desjardins the sum of $5,400. The other work on the buildings was performed by other parties, under contracts. The buildings were completed about the month of August, 1890.

In their construction appellant furnished his services as architect, at the agreed price of $400, and expended in cash $450, and personally assumed payment of $451 of liabilities incurred, making $1,391 in all, no part of which has ever been paid by Desjardins to him.

Upon the completion of the buildings Desjardins refused to account with appellant, and took exclusive possession of the lots and buildings, and collected all the rents, issues and profits, and entirely excluded appellant therefrom, and declared himself to be the sole owner of the property, and that appellant had no interest therein.

The bill, among its numerous averments, contains these: "Your orator further says that the said Joseph Desjardins has not only advanced no money of his own for the purchase of said lots and the erection of said buildings, but that, on the contrary, he has failed to apply a considerable portion of the money belonging to himself and to your orator, and procured by said loan, to the purpose for which it was borrowed as aforesaid, and has fraudulently converted the same to his own use, for the purpose of cheating and defrauding your orator out of your orator's just proportion of the profits of said enterprise. Your orator further says, that although your orator verily believes, and so charges the fact to be, that said Joseph Desjardins has advanced no money whatever for your orator in and about said enterprise; nevertheless, your orator is ready and willing and hereby offers to pay to the said Joseph Desjardins any amount that may be found to be due him upon an accounting with your orator, and to contribute your orator's just proportion to the satisfaction of all outstanding liabilities, as aforesaid, and generally to do all that upon a final hearing hereof the court may find your orator equitably bound to do under said contract."

The prayer of the bill is for an accounting, and "that a decree may be entered for a sale of said property, or of so much thereof as may be necessary to pay and satisfy said outstanding liabilities, and to adjust the accounts between your orator and the said Joseph Desjardins, and for a division of whatever may remain, either of money or real estate, after satisfying said liabilities and adjusting said accounts, between your orator and the said Joseph Desjardins according to their respective rights as they may be made to appear, or in case the said property is insufficient to provide for the said liabilities and adjust said accounts, that the losses arising from said enterprise may be fixed and your orator and the said Joseph Desjardins may be required to provide for and share the same according to their respective rights; that the respective rights of your orator and

the said Joseph Desjardins may be determined and declared by the decree of this court; that a receiver may be appointed by this honorable court to take charge of said property and collect the rents, issues and profits thereof and preserve the same until the further order of this court; and that your orator may have such other and further relief in the premises as equity may require and to your honor may seem meet."

Messrs. DUNCAN & GILBERT, Mr. W. J. HYNES and Mr. E. F. DUNNE, for the appellant:

The facts set forth in the bill created a resulting trust. Perry on Trusts, sec. 133; *McDonough* v. *O'Neil*, 113 Mass. 92; *Kindall* v. *Mann*, 93 id. 15; *Jackson* v. *Stevens*, 108 id. 84; *Page* v. *Page*, 8 N. H. 187; *Wallace* v. *Carpenter*, 85 Ill. 590; *Allison* v. *Perry*, 130 id. 9; *York* v. *Clemens*, 41 Iowa, 95.

It was unnecessary, in any event, that the bill should allege that the agreement was in writing.

Mr. HENRY MEISELBAR, for the appellees:

The bill fails to show a valid and enforceable trust. *Smith* v. *Hollenback*, 51 Ill. 223; *Rogers* v. *Simmons*, 55 id. 82; *Perry* v. *McHenry*, 13 id. 227; *Adams* v. *Adams*, 79 id. 518; *Allen* v. *Woodruff*, 96 id. 11; *Scott* v. *Harris*, 113 id. 446; *Stevenson* v. *Crapnell*, 114 id. 21; *Donlin* v. *Bradley*, 119 id. 420.

Do the facts set out in the bill show a resulting trust? *Perry* v. *McHenry*, 13 Ill. 227; *Sheldon* v. *Harding*, 44 id. 68; *Holmes* v. *Holmes*, id. 171; *Greene* v. *Cook*, 29 id. 193; *Remington* v. *Campbell*, 60 id. 516; *Bruce* v. *Roney*, 18 id. 72; *Rogers* v. *Murray*, 3 Paige, 398; *Loomis* v. *Loomis*, 28 Ill. 456; *Ward* v. *Armstrong*, 84 id. 151.

Averments, when equivocal, must be taken most strongly against the pleader. *Simpson* v. *Wright*, 21 Ill. App. 67.

Mr. JUSTICE BAKER delivered the opinion of the Court :

Appellees assume that, since the bill of complaint fails to affirmatively allege that the contract between appellant and Desjardins was in writing, therefore, under the primary rule of pleading that allegations must be taken most strongly against the pleader, it is to be regarded as sufficiently appearing upon the face of the bill that said agreement was not in writing, and rested entirely in parol. Appellees are wrong in this assumption. While in England, prior to recent changes by acts of Parliament, the presumption, that prevails in actions at law, that the statute of frauds has been complied with, did not obtain in suits in equity, and the complainants in such suits were bound either to aver compliance with its provisions, or allege facts that took the case out of the statute, yet, in this country, the doctrine is, both at law and in equity, that compliance with the statute is presumed, and the party plaintiff is not required to set out compliance in his declaration or bill. In Indiana and Iowa, and possibly in a few other States, special statutory requirements change or modify that which may be regarded as the American rule, but no such statute is in force in this State. See Am. & Eng. Ency. of Law, vol. 8, p. 745, and cases cited in note 7.

The rule then is, that the benefit of the statute, as a defense, can be taken by demurrer only when it affirmatively appears from the bill that the agreement relied on was not evidenced by a writing duly signed. Here the allegation simply is, that the complainant and Desjardins "entered into an agreement to purchase" certain designated lots and real estate, and "to erect thereon" certain specified buildings. It must be presumed from these averments that the agreement was in writing and properly signed by the parties. This being so, and there being no question but that the bill, if based on an agreement made in conformity with the requirements of the statute, states a case for equitable relief clearly within the jurisdiction of

a court of equity, it necessarily follows that it was error to sustain the demurrer and dismiss the bill for want of equity.

To simply reverse the decree and remand the cause for the error stated, without any expression of opinion in regard to the principal matter of contention between the parties, would be unadvisable. It would likely be of little benefit in the future progress of the cause upon the remandment, that the decree was reversed on a point which only incidentally arose, that which is evidently the real controversy being ignored.

The theory of the bill is that there is a partnership between appellant and Desjardins, and that the lots and the buildings erected thereon are partnership property; and the claim of appellant is that the statute of frauds has no application to such a case.

It is well settled that an oral contract by two or more persons to purchase real estate for their joint benefit is within the statute. But it has been a mooted question whether a partnership can be created by parol for the purpose of buying and selling lands for profit. There is a very considerable conflict in the cases upon that question, but the decided weight of authority seems to have answered it in the affirmative. That an agreement for a partnership, for the purpose of dealing and trading in lands for profit, is not within the statute, and that the fact of the existence of the partnership, and the extent of each party's interest, may be shown by parol is now quite generally accepted as the established doctrine. *Dale* v. *Hamilton,* 5 Hare, 369; *Essex* v. *Essex,* 20 Beav. 449; *Holman* v. *McCrary,* 51 Ind. 358; *Richards* v. *Grinnell,* 63 Iowa, 44; *Chester* v. *Dickerson,* 54 N. Y. 1; *Black* v. *Black,* 15 Ga. 449; *Fall River Whaling Co.* v. *Borden,* 10 Cush. (Mass.) 458; *Bunnel* v. *Taintor,* 4 Conn. 568; *Pennybacker* v. *Leary,* 65 Iowa, 220; *Gibbons* v. *Bell,* 45 Texas, 417; *Perronette* v. *Pyme,* 34 N. J. Eq. 26.

It is useless to restate the arguments *pro* and *con* bearing on the point under consideration; and it is hardly probable

that we could now make any suggestion that has not already been fully considered. The leading and more important cases are discussed or referred to in Browne on the Statute of Frauds (4th ed.), section 259 *et seq.* and notes, and are also cited in notes to pages 700 to 704 of vol. 8 of Am. & Eng. Ency. of Law.

The cases we have cited, and many others, proceed upon the theory that the real estate of a partnership is treated and administered in equity, as between partners and for all the purposes of the partnership, as personal property and partnership assets. From its status in equity, of being stock in trade and partnership assets, it is readily deducible that it is immaterial whether the legal title to the partnership land is in all the partners, or in one, or in some number less than the whole; that it is not material whether the partnership was already established and engaged in its business when the land was acquired and brought into the partnership stock, or whether the partnership was established and the land acquired and put in contemporaneously, or whether the partnership was established for the express and special purpose of dealing in and making profit out of the very land itself which is in question; and that the facts of the existence of the partnership, and that the lands were acquired and used for partnership purposes, being shown by parol, it is immaterial whether such partnership was formed by written articles or by parol. Browne's Stat. Frauds, sec. 261a.

The doctrine of the cases we have cited, so far as it involves the provisions of the statute of frauds, seems to proceed upon the ground of a trust implied from the relation of co-partnership.

The matter here at issue is a close question and beset with difficulties whichever view is taken. It seems difficult to demonstrate, to a certainty, that the doctrine above stated should prevail and take partnership agreements and partnership property out of the statute, and equally difficult to satis-

factorily demonstrate that such agreements are within the statute, as held in *Smith* v. *Burnham*, 3 Sumner, 437 ; *Bird* v. *Morrison*, 12 Wis. 138, and other cases. Upon the whole, we are inclined to follow the view which seems to obtain in England and in most of the States of the Union, that partnership agreements and partnership lands, as between the partners and for all partnership purposes, are not within the statute.

The bill in the case at bar shows that the parties agreed to purchase the five lots and erect buildings thereon, each party contributing one-half of the money necessary for the enterprise, the lots and buildings then to be sold, and the profit or loss arising from the enterprise to be divided equally between them. This was manifestly a partnership agreement. The bill then shows that the parties purchased the lots "in pursuance of the agreement," and that, at the same time and as a part of the same transaction, money was raised by placing mortgages on the lots and the purchase price of the lots paid with such money. Whose money, then, was it that was applied in payment of the lots? It is admitted that, by the terms of the partnership agreement, all liabilities that the partners, or either of them, should create in furtherance of the enterprise, were to be, as between the partners, treated and considered as joint liabilities to be met and shared by them in equal shares. This would seem to stamp the money that was received on the mortgages and paid on the lots as partnership money. Since, then, the money, by force of the agreement, was partnership money, it follows that, when $3750 of it was, at the time of the purchase, paid as the purchase money of the lots, a resulting trust at once arose by operation of law, out of the transaction, in favor of the partnership. See *Wallace* v. *Carpenter*, 85 Ill. 590.

Our conclusion, therefore, is that, without regard to the question whether or not the partnership agreement mentioned in the bill of complaint was in writing, a proper case for the

interposition of a court of chancery was stated in the bill, and it was error to sustain the demurrer and dismiss said bill.

The decree is reversed, and the cause is remanded with directions to overrule the demurrer.

*Decree reversed.*