ELIZABETH BRENNAMAN *et al.*

*v.*

SUSANNAH SCHELL.

*Opinion filed October 24, 1904—Rehearing denied December 8, 1904.*

1. REAL PROPERTY—*when resulting trust arises.* A resulting trust arises by operation of law where the purchase money for land is paid by one person and the title purchased is conveyed to another.

2. SAME—*resulting trust is not defeated by parol agreement to convey.* A resulting trust arising by operation of law is not defeated because the grantee verbally agreed to convey the title to the *cestui que trust* upon request.

3. SAME—*question of advancement is one of intention.* The presumption that a conveyance to a child of a title purchased with money paid by the parent is an advancement may be rebutted by proof of facts and circumstances showing a contrary intention, in which case a resulting trust arises in favor of the parent.

4. SAME—*what proof rebuts the presumption of advancement.* Proof that the parent reluctantly consented to the conveyance to a child by a title purchased with the parent's money, being influenced to do so by business reasons, and that after the conveyance the parent took possession and improved the property and after leaving the same rented it to tenants, rebuts the presumption that the conveyance was an advancement.

5. SAME—*what does not prevent enforcement of resulting trust.* Enforcement of a resulting trust in property the title to which was purchased by the mother with her own funds but conveyed to her daughter, is not defeated by the fact that the conveyance was so made to prevent the father from acquiring a dower interest.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

This is a bill, filed on March 17, 1903, in the circuit court of McLean county by the appellee against the appellants, Elizabeth Brennaman and her husband, John Brennaman, and one Henry C. Bishop for the purpose of having a trust declared in favor of appellee in lot 2, block 6 Phœnix's addition to the city of Bloomington. The bill alleged that on

September 29, 1896, the appellee purchased said lot from one Fritzen for $800.00, and caused the deed to be made to her daughter, the appellant Elizabeth Brennaman, with the mutual understanding and agreement that said appellant, who was then Lizzie E. Schell, (now Brennaman), would convey the same on request; that appellee has caused improvements to be made upon the house on the premises, costing $1000.00, and has occupied the same; that the deed was delivered to said Lizzie, or Elizabeth, for the purpose of vesting the title in trust for the use and benefit of appellee; that said Lizzie never paid any part of the purchase money, and, after her marriage with John Brennaman, borrowed from said Bishop $875.00, and to secure the same on October 7, 1902, executed a mortgage for said last named sum; that said mortgage was in bad faith and without any color of right; that, when it was made, there was a mortgage on the premises for $353.75, which said Lizzie paid off out of the proceeds of the loan from Bishop; that appellee has offered to re-pay her said amount, and any taxes she may have paid, and has requested her to convey the lot to appellee, but that said Elizabeth refuses so to convey; that appellee is ready and willing to pay Elizabeth all the money she has advanced, and offers to pay the same; that appellee is entitled to a conveyance of said lot, and the cancellation of the Bishop mortgage, and prays for an accounting; and that the Bishop mortgage may be canceled, and said Elizabeth and her husband may be decreed to convey the lot to appellee by a good and sufficient deed.

Answers were filed by the three defendants, John and Elizabeth Brennaman, and Bishop to the bill, and subsequently there was filed by Elizabeth and John Brennaman an amended answer. The answer of Elizabeth Brennaman and her husband denies all the material allegations of the bill, and sets up that the agreement, referred to in the bill, was void as not being in writing in accordance with the requirements of the statutes of this State. The answers also set up that the conveyance, made by Fritzen to Elizabeth

Brennaman, was made to fraudulently defeat the dower right of appellee's husband; and, also, that it was made as an advancement to appellant; and also that, after the deed was made, there was an agreement between appellee and her daughter by which the former agreed not to question the daughter's title to the lot.

After the cause was at issue, it was referred to a master in chancery to take testimony and report. The master's report finds, substantially, that the allegations of the bill are true, and that the appellee is entitled to the relief prayed for in the bill. Exceptions were filed to the report, which were overruled, and a final decree was rendered in favor of appellee on December 19, 1903, which decree was substantially in accordance with the prayer of the bill, and found that the equity of the cause was with the complainant, Susannah Schell; that, without the knowledge of the complainant, Elizabeth Brennaman and her husband mortgaged the premises to Bishop for $875.00; that out of this sum they paid a mortgage then on the premises amounting to $375.00; that, as between Bishop and complainant and defendants, this mortgage is not questioned, but stands as a valid lien against the lot; that the money, paid by the defendant on the prior mortgage of $375.00 and for repairs and improvements and taxes, amounted in all to $440.00; that the defendant out of the proceeds of the mortgage, which she put upon the premises held by her in trust for her mother, owed to appellee, after deducting said credits of $440.00, the sum of $466.32; and the decree thereupon ordered that Elizabeth Brennaman and her husband execute a deed to the appellee, conveying said lot subject to the Bishop mortgage, which mortgage appellee was directed to assume and agree to pay and deliver to the master in chancery of the court within thirty days of the date of the decree for appellee; and that said Elizabeth should pay into the hands of the master $466.32 within thirty days of the signing of the decree, and, upon such payment being made, that the master should deliver such deed and

money to the appellee, and, in default of said deed being executed and delivered, and in default of such payment within the time named, the master should execute and deliver to appellee a sufficient deed, subject to the Bishop mortgage, which appellee was to assume and agree to pay; that said master's deed should be sufficient to transfer all the interest of Elizabeth and John Brennaman in and to said lot; and, in default of the payment of $466.32 by Elizabeth Brennaman, the same should stand as a decree against her, and, if not paid within thirty days, that an execution issue therefor. From the decree so rendered, the present appeal is prosecuted.

LIVINGSTON & BACH, and BARR & BRENNAN, for appellants:

An express trust not evidenced by writing is void and cannot be enforced. *Munson* v. *Hutchin,* 194 Ill. 431; *Williams* v. *Williams,* 180 id. 361; *Perry* v. *McHenry,* 13 id. 227; *Lantry* v. *Lantry,* 51 id. 458; *Johnston* v. *Johnston,* 138 id. 385.

Where there is an express trust there cannot be an implied or resulting trust. *Mayfield* v. *Forsyth,* 164 Ill. 32; *Kingsbury* v. *Burnside,* 58 id. 310; *Benson* v. *Dempster,* 183 id. 297; *Moore* v. *Horsley,* 156 id. 36; *Euans* v. *Curts,* 190 id. 197; 1 Perry on Trusts, sec. 79; *Pickler* v. *Pickler,* 180 Ill. 168.

To overcome the theory of advancement, where property is purchased by a parent in the name of a child, the evidence must be clear and unequivocal. *Cline* v. *Cline,* 204 Ill. 130; *Goelz* v. *Goelz,* 157 id. 33; *Johnston* v. *Johnston,* 138 id. 385.

Where the transaction is tainted with fraud the court will not assist either. *Miller* v. *Marckle,* 21 Ill. 151; 15 Am. & Eng. Ency. of Law, 51; 14 id. 394; *Nesbitt* v. *Digby,* 13 Ill. 387; *Fitzgerald* v. *Forristal,* 48 id. 228; *VanNest* v. *Yoe,* 1 Sandf. 4.

A conveyance to defeat the rights of husband's dower or homestead is fraudulent and no relief can be given. Statute

of Frauds, sec. 4; *Tyler* v. *Tyler,* 126 Ill. 525; *Tiffany* v. *Tiffany,* 103 Iowa, 233; *McClintock* v. *Loisseau,* 2 L. R. A. 816; *Freeman* v. *Hartman,* 45 Ill. 57; *Ward* v. *Ward,* 51 L. R. A. 858.

THOMAS W. TIPTON, for appellee:

An oral express trust will be taken out of the operation of the Statute of Frauds by (1) furnishing the consideration; (2) making of valuable and permanent improvements; and (3) possession and payment of taxes. *McNamara* v. *Garrity,* 106 Ill. 384; *Kurtz* v. *Hibner,* 55 id. 514; *Keys* v. *Test,* 33 id. 316; *Bright* v. *Bright,* 41 id. 97; *Blunt* v. *Tomlin,* 27 id. 93; *Tyler* v. *Echart,* 1 Bin. 378; *Mason* v. *Blair,* 33 Ill. 194; *Dorman* v. *Dorman,* 187 id. 154.

Where land is paid for with the money of one person and the title taken in the name of another, such person holds the land in trust for the one who furnishes the consideration. *Mayfield* v. *Forsyth,* 164 Ill. 32; *Emmons* v. *Moore,* 85 id. 304; *VanBuskirk* v. *VanBuskirk,* 148 id. 9; *Dorman* v. *Dorman,* 187 id. 154; *Lewis* v. *McGrath,* 191 id. 407.

Where it is shown that the intention of the parties is otherwise, the presumption of an advancement is wholly overcome and makes it a resulting trust. *VanBuskirk* v. *VanBuskirk,* 148 Ill. 9; *Dorman* v. *Dorman,* 187 id. 159; *Pool* v. *Phillips,* 167 id. 432; *Skahen* v. *Irving,* 206 id. 607; *Lewis* v. *McGrath,* 191 id. 407; *Smith* v. *Smith,* 144 id. 299; *Maxwell* v. *Maxwell,* 109 id. 588; *Taylor* v. *Taylor,* 4 Gilm. 303; *Reed* v. *Reed,* 135 Ill. 482; *Wormley* v. *Wormley,* 98 id. 553.

The making of a deed to appellant is not a fraud upon the husband of appellee. *Kirkpatrick* v. *Clark,* 132 Ill. 346; 10 Am. & Eng. Ency. of Law, 142, note 6; *Tink* v. *Walker,* 148 Ill. 238; *Nichols* v. *Ogden,* 29 id. 323; *Atkin* v. *Merrell,* 39 id. 62; *Virgin* v. *Virgin,* 189 id. 151.

A parol agreement will not aid or prevent a resulting trust if the facts are such as produce the implication of law

from which a resulting trust arises.   15 Am. & Eng. Ency.
of Law, 1154, and cases cited; *Furber* v. *Page,* 143 Ill. 622;
*Smith* v. *Smith,* 85 id. 189; *William* v. *Brown,* 14 id. 202;
*Wallace* v. *Carpenter,* 85 id. 590; *McNamara* v. *Garrity,*
106 id. 384; *Harris* v. *McIntyre,* 118 id. 275; *Dorman* v.
*Dorman,* 187 id. 154.

The Statute of Frauds does not affect a resulting trust.
*Champlin* v. *Champlin,* 136 Ill. 313; Starr & Cur. Stat. chap.
59, par. 9.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

*First*—The theory of the bill in this case is, that the ap-
pellant, Elizabeth Brennaman, holds the legal title to the lot
in question in trust for her mother, the appellee, and that
such trust is a resulting one. The sum of $800.00 was paid
for the lot, and the money so paid belonged to appellee.   But
when Fritzen, the vendor of the lot, made the deed, he made
it to Lizzie Schell, (now Brennaman) appellee's daughter,
instead of making it to the appellee herself.   The proof is
quite clear to the effect that the money, with which the lot
was bought, was appellee's money.   There had been some
trouble between appellee and her husband, and a separation
had taken place between them, although there had been no di-
vorce.   Appellee's husband made arrangements to sell a farm,
which he owned, for $10,500.00, and, believing that he was
about to leave her, she refused to sign the deed, but finally
did so upon his agreeing to give her $1500.00.   Accordingly,
he paid her $1500.00 of the purchase money, and himself
took $9000.00.   The $800.00, with which the lot now in con-
troversy was purchased, was a part of this $1500.00, so paid
to her by her husband.   The proof tends to show that this
sum of $1500.00 was first used in purchasing a farm, the
title to which was taken in the name of her son, Robert Schell.
But he held the title for the benefit of his mother, the present

appellee. Subsequently, Robert Schell sold the farm, and out of the proceeds was realized a certain sum of money, of which the sum of $800.00 here referred to was a part. Before this sum was used in the purchase of the lot now in controversy, it had been deposited in bank in the name of appellee's daughter, Mrs. Brennaman, but it was for the use of her mother, the appellee. Without going further into the details of the testimony, we are satisfied that, although the money originally given appellee by her husband, was invested from time to time, and the investments were changed, yet the money always remained hers, and that the sum of $800.00, which was a part of it, was her money at the time of the purchase of the lot in question.

Under this state of facts there was a resulting trust in favor of the appellee. That is to say, the appellant, Mrs. Brennaman, held the title under a resulting trust in favor of her mother, the appellee. It is well settled that, where the purchase money for land is paid by one person, and the title thereby purchased is conveyed to another person, the law construes such facts as constituting a resulting trust. Such a resulting trust arises by operation of law. It does not spring from the contract, or agreement of the parties, but from their acts. The beneficial estate follows the consideration, and attaches to the party, from whom the consideration comes. Such trusts may be established by parol evidence, and the Statute of Frauds has no application to them. Our Statute of Frauds expressly provides that "resulting trusts, or trusts created by construction, implication, or operation of law, need not be in writing and the same may be proved by parol." (*VanBuskirk* v. *VanBuskirk*, 148 Ill. 9). The doctrine is thus stated in 15 Am. & Eng. Ency. of Law,—2d ed.—1132: "It is the well settled rule that, where the consideration for an estate is paid by one person and the legal title is conveyed to a third person, such third person being a stranger to the person paying the consideration, the person taking the legal title holds the land by way of a resulting trust in trust for the

person making the payment. This trust arises from the character of the transaction, and is independent of any express agreement on the part of the grantee to hold in trust for the payor." (*Mayfield* v. *Forsyth,* 164 Ill. 32; *Emmons* v. *Moore,* 85 id. 304; *Dorman* v. *Dorman,* 187 id. 154; *Lewis* v. *McGrath,* 191 id. 401; *Reed* v. *Reed,* 135 id. 482; *Mc-Namara* v. *Garrity,* 106 id. 384). All the conditions, required by the authorities to constitute a resulting trust, existed in the matter of the purchase of the lot by appellee and the conveyance of the title thereof to appellee's daughter. In *Reed* v. *Reed, supra,* it was held that the trust can only arise from the original transaction at the time it takes place and at no other time, and that the funds must be advanced and invested at the time the purchase is made. Here, the money was advanced and paid at the time of the purchase and at the time of the conveyance of the title to the appellant, Mrs. Brennaman.

The bill alleges that, at the time of the purchase of this lot and its conveyance by Fritzen to Elizabeth Schell, as aforesaid, there was a mutual understanding and agreement between Lizzie Schell and her mother, that the former would convey the lot to her mother on request. The proof also shows that Lizzie told her mother at the time of the purchase that she would convey the lot back to her. In view of this agreement or understanding, it is contended by counsel for appellants that there was here not a resulting trust, but an express trust, and that, under the Statute of Frauds, such express trust is void as not being in writing. We do not agree with this contention of counsel. It is true that a resulting trust arises by operation of law, and from the acts of the parties, and not from any contract between the parties, but where the agreement or understanding between the parties at the time of the purchase is merely such as the law would imply, no express trust is created. This doctrine is thus stated in 15 Am. & Eng. Ency. of Law,—2d ed.—p. 1154: "The fact, that the person, in whose name the title is taken, verbally agrees

at the time of the conveyance to hold the property in trust for the person by whom the purchase money was paid, upon the same terms which the law would imply, does not create an express trust, which would be unenforceable on account of the Statute of Frauds, and thereby prevent the implied trust from resulting from the transaction itself; for, as has been said, an invalid agreement cannot destroy a good cause of action, and this is no less true of resulting trusts than of other legal rights."

In *Furber* v. *Page,* 143 Ill. 622, we said (p. 630) : "It is well established that no parol agreement, and no payments, whenever made, will create a resulting trust, unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself. * * * So, while a parol agreement will not aid or extend the trust, it will not prevent a trust resulting, if the facts are present that produce the implication of law from which it arises." In the case at bar, the trust, upon which Mrs. Brennaman agreed to hold this title for her mother at the time the conveyance was made, was not a different trust from that which the law itself would imply. The trust, being a resulting one, could not be executed or carried out without a conveyance of the legal title at some time or other to the party owning the beneficial interest. Therefore, the agreement to convey the title upon request was nothing more than the acknowledgment of an obligation, which the law itself implied and imposed.

In *McNamara* v. *Garrity,* 106 Ill. 384, land was bought by McNamara and Garrity from one Davidson, but the title was conveyed by Davidson to McNamara, and it was there held that a resulting trust arose in favor of Garrity as to an aliquot part of the land purchased, although, at the time of the purchase, there was an agreement that, "when the purchase money should all be paid, McNamara was to convey to Garrity his ten acres of the tract."

In *Dorman* v. *Dorman,* 187 Ill. 154, where the facts showed that Dorman purchased certain lands, the title to

which was conveyed by the vendor at his request to Mrs. Dorman, his wife, it was held that there was a resulting trust in favor of Dorman, who had paid the purchase money, although the title was taken in the name of his wife, and although it there appeared that "he took title in her name with the understanding and expectation that she would re-convey the same to him on request." The case of *Dorman* v. *Dorman, supra,* as thus stated, is on all-fours with the case at bar. Here, Mrs. Brennaman agreed at the time of the purchase that she would convey the title to her mother upon request, and such was the nature of the agreement in the *Dorman case;* but such agreement was not there, nor can it be here, held to operate as creating an express trust.

*Second*—It is contended on the part of the appellants that the property was conveyed to Lizzie Schell by her mother as an advancement. The general rule is that, if the purchase money is paid by the husband or father, and the legal title is taken in the name of the wife or child, the implication of a resulting trust does not arise, but the presumption is that the conveyance to the wife or child was intended as an advancement. (*Smith* v. *Smith,* 144 Ill. 299; *Dorman* v. *Dorman, supra*). It is well settled, however, that such presumption in favor of the transaction being an advancement may be rebutted by evidence, showing that, at the time of the conveyance of the legal title, it was the intention of the husband or father that the wife or daughter should not take the beneficial interest. (15 Am. & Eng. Ency. of Law,—2d ed.—pp. 1156-1164). Whether or not the purchase in the name of a wife or child is an advancement is a question of intention, and, where it is shown that at the time of the conveyance to the child, it was not intended by the parent that the child should take the beneficial interest, a trust will result in the parent's favor. (15 Am. & Eng. Ency. of Law,—2d ed.—p. 1163; *Dorman* v. *Dorman, supra*). Such intention may be shown by proof of antecedent or contemporaneous acts or facts; or of acts or facts occurring so soon after the purchase, as to

be fairly considered parts of the transaction. (15 Am. & Eng. Ency. of Law,—2d ed.—pp. 1157, 1158). It may be shown that the conveyance was not intended to be an advancement by such proof of acts and circumstances, as clearly indicate that the intention was not to make an advancement. (*Johnston* v. *Johnston,* 138 Ill. 385).

The evidence in the case at bar shows that the appellee did not intend to make an advancement when the title was conveyed to her daughter. On the contrary, appellee desired the title to be conveyed directly to herself. But her son and daughter suggested to her that, as a separation existed between her and their father, she might have difficulty in inducing her husband and their father to join in a conveyance, in case they should conclude to sell the land, or in a mortgage, in case they should conclude to borrow money upon it. It has been held that, where title has been taken in the name of the child without the consent of the parent by whom the purchase money is paid, such fact is sufficient to rebut the presumption of an advancement. (15 Am. & Eng. Ency. of Law,—2d ed.—p. 1164, and cases referred to in notes). While it cannot be said that the title here was taken in the name of Mrs. Brennaman without the knowledge or consent of the appellee, her mother, yet the proof does show that the appellee was reluctantly persuaded to put the title in her daughter when she preferred to have it in herself. This circumstance tends to show that there was no intention to make an advancement to the daughter. Again, as soon as the purchase of the lot was made, the appellee went into possession of the premises, and improved the same to the extent of $1000.00, and paid taxes upon the same, and paid off mortgages which rested upon the lot, and subsequently, when both she and her daughter, who after her marriage lived a while with her upon the premises, vacated them, the appellee rented the premises to third parties, and herself appropriated the rents. In our opinion the proof in the present case is sufficient to rebut any presumption in favor of an advancement.

*Third*—It is furthermore contended by counsel for appellants that appellee caused the conveyance to be made to her daughter, instead of herself, in order to prevent her husband from asserting his right of dower in the premises, and that, therefore, the conveyance to the daughter was made for a fraudulent and unlawful purpose, so that a court of equity will not aid the appellee in enforcing the trust sought to be set up. The proof does not sustain the contention that the appellee intended to defraud her husband out of his dower in the premises, but she yielded to the solicitation of her son and daughter in the matter merely for the purpose of avoiding the necessity of calling upon the husband, or father, to sign deeds or mortgages when it should become necessary to do so. But in answer to this objection, it is sufficient to quote what was said by this court, speaking through the late Mr. Justice BAILEY in the case of *Kirkpatrick* v. *Clark,* 132 Ill. 342 : "If the lot in question had been conveyed directly to the defendant, it would have vested in her husband no right or interest except an inchoate right of dower, and it was no fraud upon him if his wife, in purchasing the lot had the title conveyed to a trustee for the express purpose of preventing such right from attaching. Even at common law where the husband was entitled to the possession and enjoyment of his wife's lands during their joint lives, it was never supposed to be a fraud upon his rights for his wife to have lands purchased with her separate means, or derived from sources other than her husband, conveyed to a trustee, for the sole purpose of placing them beyond his control and having them held for her separate use, and such trusts were habitually resorted to for that purpose. But under our statute a married woman is entitled to the sole possession and enjoyment of her lands, free from the interference and control of her husband, the husband's right of dower, even after it has become vested, being imperfect and incapable of assertion or beneficial enjoyment until after her death. How then can he be said to have rights in lands which his wife does not yet own, but

which she contemplates purchasing, which it would be a fraud upon him to deprive him of? Dower in lands which the wife does not yet own is an interest to which the husband has neither a legal, equitable or moral right, and the wife is entirely at liberty to so manage her purchases made with her own means, if she can, as to prevent his acquiring such right." (See also *Tink* v. *Walker,* 148 Ill. 234). In the case at bar, the evidence shows that appellee's husband died in 1902 before the present bill was filed, so that no dower claim can be asserted in his behalf against this lot.

After the purchase of this lot by appellee, her daughter, then Lizzie Schell, lived with her mother some three years until her marriage. After her marriage with the appellant, John Brennaman, she lived for a short while with her mother upon these premises—from October to March—but, during most of the time after her marriage, which occurred in March, 1900, the daughter and her husband lived upon premises of their own. Some proof was introduced on the part of the appellants for the purpose of showing that appellee agreed with her daughter, when she and her husband came to live with appellee, that if the daughter would do so, appellee would allow her to retain the title to the property in question. The agreement, thus claimed to have existed, was not in writing, but, if it existed at all, was merely a verbal agreement. The appellee positively contradicts the statement made by her daughter and the latter's husband, that any such agreement was ever made by her. Her son died and left some insurance money, which she used in paying off some mortgages upon the property, so that she did not have the benefit of his testimony in this case. The master and the court below found that no such agreement existed, and we see no reason to doubt the correctness of this conclusion from our examination of the evidence.

The daughter and her husband, without the knowledge of their mother, executed a mortgage for $875.00 upon the property. They used a part of this money in paying off an

old mortgage of between $300.00 and $400.00, which existed upon the property, and in paying some taxes. But the decree entered below gives them credit for all that was thus paid out by them for the benefit of the property. The decree only requires her to return so much of the money, which they raised by mortgaging the property, as remained after they received credit for what they so paid out.

After a careful examination of the record, we are satisfied that the decree of the circuit court was correct. Accordingly, that decree is affirmed.    *Decree affirmed.*